IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. KATRINA ROBINSON )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>1. NATIONSTAR MORTGAGE, LLC., )<br>    D.B.A. "MR. COOPER," )<br>    and )<br>2. OGDEN INSURANCE AGENCY, INC., )<br>    Defendants. ) | Case No.:  21-CV-380-KEW |

## COMPLAINT

Katrina Robinson, Plaintiff, brings this action against Nationstar Mortgage, LLC., d.b.a. Mr. Cooper for violations of the Fair Housing Act, the Oklahoma Discrimination in Housing Act, the Oklahoma Consumer Protection Act, and for common law fraud. The Plaintiff reserves her right to amend this Complaint up to and through the time of pretrial. **This case is not related to any other case filed in this Court.**

## JURISDICTION

1. The Plaintiff is the transfer on death deed beneficiary to real property situated in Muskogee County, Muskogee, Oklahoma.

2. The Defendant Nationstar Mortgage (A.K.A. Mr. Cooper) is a Texas, LLC., doing business in Muskogee, Oklahoma.

3. The Defendant, Ogden Insurance Agency Inc., is an Oklahoma for Profit corporation conducting business in Muskogee, Oklahoma.

4. The conduct complained of occurred in Muskogee, Oklahoma and/or impacted property situated in Muskogee, Oklahoma. Additionally, the contract that created the rights and duties of the Parties herein was made in Muskogee County, Oklahoma.

5. Muskogee County is in the Eastern federal district in Oklahoma.

6. Venue is proper since the matter concerns real property situated in Muskogee County, Oklahoma, in the United States Eastern district, and the contracts creating the relationship between the Parties was made and is currently being performed in Muskogee, Oklahoma.

7. This Court, as a court of competent jurisdiction, has jurisdiction over all claims arising under federal and state law pursuant to 28 U.S.C. §§ 1331 and 1367, and 42 U.S.C.A. § 3613.

## FACTS

### *Initial Contract Formation*

8. Plaintiff, Katrina Robinson is a person who was associated with Ms. Kathalene Terrell, her mother. She was the only child of Ms. Terrell. Ms. Robinson is also a person with a disability – as that term is defined under the fair housing laws. She was in active service in the military until around 2020. From 2010 until her retirement, she toured several countries including Iraq and Kuwait. She was in active duty in 2015 and 2016. In 2020, Ms. Robinson was medically retired from the army. She currently receives disability income.

9. Ms. Terrell was a person with a disability, as defined under the fair housing laws. Ms. Terrell, the mother of Ms. Robinson, had at least one physical or mental condition that substantially impaired her ability to engage in one or more major life functions. Ms. Terrell had, *inter alia*, hypertension, renal disease, and anxiety. Because of her conditions, Ms. Terrell was often hospitalized and received dialysis. In June 2021, Ms. Terrell died from complications resulting from her disabilities.

10. As the manifestation of the symptoms of her disabilities progressively worsened, Ms. Terrell could no longer work her regular job.

11. After leaving work, Ms. Terrell received public benefits as income in the form of Social Security retirement income. Her retirement income was her sole source of income.

12. Ms. Terrell resided at 524 Elberta St, Muskogee, Oklahoma ("Elberta dwelling") for more than thirty years and until the time of her death.

13. On or around October 12, 2012, Ms. Terrell executed and filed a transfer on death deed for the benefit of Katrina Robinson for the Elberta dwelling. Muskogee County Land Records, Record No. 1-2012-011898, Book No. 4299, Page. 98.

14. On or around April 4, 2013, Ms. Terrell executed a promissory note and mortgage in favor of Nationstar for the Elberta dwelling. Hereinafter, the promissory note and mortgage shall be referred to as "The Agreement."

15. Pursuant to the terms of the Agreement, Ms. Terrell made monthly payments to Nationstar on the note obligation in the amount of $385.31 (Note Payment) per month towards the principal and interest payments.

16. The monthly interest rate was 3.75% per annum.

17. Pursuant to the terms of the Agreement, Ms. Terrell also made an additional monthly payment, contemporaneously with the note payment, towards an escrow account from which Nationstar paid the homeowner's insurance premiums and the taxes for the property (escrow payment).

18. Defendant Ogden received payments from Nationstar from the proceeds of the escrow account for Ms. Terrell's loan account.

19. The note payment and the escrow payment constituted the Plaintiff's monthly house payment.

*Request for Reasonable Accommodation*

20. In August 2015, Ms. Terrell was hospitalized due to complications from hypertension. As a result of the hospitalization, she became delinquent by one month on her house payment.

21. Upon release from the hospital, Ms. Terrell contacted Nationstar to make arrangements for the monthly house payment that she missed.

22. Nationstar told her to send in a partial payment in a certain amount towards the payment. Ms. Terrell complied.

23. Nationstar returned the partial payment that Ms. Terrell mailed to it at its direction in September 2015.

24. Ms. Terrell sent in additional sums to Nationstar in October 2015 and November 2015.

25. Nationstar returned all payments to Ms. Terrell.

26. In November 2015, Ms. Terrell retained counsel, who made a request for a reasonable accommodation for Ms. Terrell, pursuant to the fair housing laws.

27. Ms. Terrell's counsel requested, as a reasonable accommodation, that Nationstar accept the funds that it returned to Ms. Terrell in September 2015, October 2015, and November 2015.

28. Ms. Terrell's counsel also requested that counsels for Terrell and Nationstar determine the arrearages, if any, and that the parties work together to structure a repayment plan to bring Ms. Terrell's account current.

29. Nationstar ignored the reasonable accommodation request.

*Foreclosure proceedings in Muskogee County*

30. In February 2016, Nationstar filed a foreclosure action against Ms. Terrell to foreclose the note and the mortgage. Muskogee County District Court Case Number CJ-2016-49.

31. Nationstar also named Ms. Robinson as a party to the foreclosure lawsuit because of the transfer on death deed that Ms. Terrell filed.

32. Nationstar did not personally serve Ms. Robinson.

33. At the time of the filing of the foreclosure action, Ms. Robinson was still actively serving in the military and may have been on tour in another country.

34. Ms. Robinson did not live at the Elberta dwelling at the time of the filing of the foreclosure action nor did she live anywhere in Oklahoma.

35. Ms. Robinson only learned about the foreclosure action after she applied for a promotion with the military. The action was discovered when Ms. Robinson's background was investigated in connection with her obtaining her security clearance for the position that she sought. This occurred sometime after the case was either at issue or dismissed.

36. Ms. Terrell raised a counterclaim for failure to accommodate under the fair housing laws.

37. On October 26, 2017, the state district court granted Nationstar a summary judgment for the foreclosure action against all named parties, including Ms. Robinson, who at the time was in active military service.

38. The state district court dismissed Ms. Terrell's counterclaim for failure to accommodate.

39.  During the pendency of the foreclosure and after its disposition, Nationstar expended no efforts to discover the active military status of Ms. Robinson – including failing to even inquire with Ms. Terrell as to Ms. Robinson's whereabout.

40.  On its return of service document, Nationstar's process server falsely stated that Ms. Robinson was not in active military service.

41.  Ms. Terrell timely appealed the judgment dismissing her counterclaim. The Oklahoma Court of Civil Appeals affirmed the judgment on March 4, 2019.

*Retaliation*

42.  After the granting of the judgment, and while Ms. Terrell's appeal remained pending, Ms. Terrell and Nationstar engaged in loss mitigation efforts for her loan.

43.  As part of the process, Ms. Terrell informed Nationstar that she intended to keep the Elberta dwelling and to occupy the Elberta dwelling as her primary residence.

44.  On June 5, 2018, the Parties entered into a loan modification agreement to modify the terms of the Agreement and to reinstate Ms. Terrell's loan (modified agreement).

45.  Under the terms of the modified agreement, Ms. Terrell would pay $482.18 for the note payment.

46.  Nationstar unilaterally, and without explanation, increased Ms. Terrell's monthly interest rate from 3.75% to 4.125% under the terms of the modified agreement.

47.  Ms. Terrell's entire modified payment was to be approximately $683.

48.  On August 7, 2018, Nationstar vacated the part of the judgment and reinstated her loan.

49.  In October 2018, Nationstar increased Ms. Terrell's monthly payment from approximately $683.00 to $732.36.

50. Nationstar explained that the reason for the increase was that Ms. Terrell's hazard insurance policy was cancelled, and Nationstar had to obtain hazard insurance for her.

51. Ms. Terrell immediately contacted the insurer, Ogden, to discover the basis for the cancellation.

52. Ogden informed her that it cancelled the policy because someone made a claim on the insurance to fix the window and the roof, and the repairs were not made.

53. Neither Ms. Terrell nor Ms. Robinson made the alleged claim with Ogden.

54. Ms. Terrell inquired about who made the claim, but Ogden did not disclose the information.

55. Nationstar did not disclose any communications with Ogden to Ms. Terrell or Ms. Robinson.

56. Ms. Terrell could not afford to get the repairs made to her housing so that she could obtain replacement insurance.

57. She reached out to other community agencies to obtain assistance to make the repairs. She was not successful in obtaining assistance to make the repairs.

58. Ms. Terrell also tried to obtain a reverse mortgage to assist her with the repairs. She did not qualify for a reverse mortgage.

59. Nationstar, to date, has not made repairs needed to posture the house to be insured without forced place insurance.

*Oklahoma State Insurance Department complaint and Investigation*

60. In March 2020, Ms. Terrell also complained to the Oklahoma State Insurance Department (OSID) about the cancellation of the policy.

61. The OSID completed its investigation and disclosed that it contacted Ogden for an explanation for the cancellation of the insurance policy.

62. Ogden responded that it cancelled the policy because Nationstar contacted Ogden in 2018 and informed Ogden that Ms. Terrell was no longer living at the property.

63. Ogden claimed to have conducted a drive by inspection and found the mailbox filled with mail.

64. Ogden also claimed that it questioned the neighbors, and the neighbors informed them that they had no idea where Ms. Terrell was.

65. Ogden refunded Nationstar the premiums paid towards the policy and cancelled the policy.

66. Nationstar knew that Ms. Terrell occupied the Elberta dwelling when it made the statement because Ms. Terrell and Nationstar were actively engaged in the loan modification process. Nationstar's request for mortgage assistance application required Ms. Terrell to disclose that she resided in the property as her primary residence and sought assistance to continue to occupy the property as her primary residence.

67. In 2018, Ms. Terrell occupied the Elberta dwelling as her primary residence and spoke with Ogden regularly – especially after she learned that Ogden cancelled her insurance policy.

68. Ms. Terrell filed a housing discrimination complaint with the United States Department of Housing and Urban Development upon learning about Nationstar's retaliatory actions against her. It remains pending to date.

69. Nationstar continues to bill and collect a higher house payment for the Elberta residence, each month, based upon the increased cost of the forced place hazard insurance.

70. Ms. Terrell departed this life in June 2021.

71. Ms. Robinson, the Plaintiff, filed her affidavit of transfer on death deed beneficiary with the Muskogee County Clerk and is the lawful owner of the property.

72. Nationstar, continues to bill the mortgage at the increased rate.

73. Nationstar has renewed its forced placed insurance each year at higher rates from 2018 and ongoing.

74. Ms. Robinson has paid portions of the mortgage to maintain the property after her mother's demise.

75. Upon information and belief, Nationstar has not applied any of the payments made by Ms. Robinson to the loan.

76. In November 2021, Nationstar sent a demand letter to the Elberta dwelling demanding the payment of nearly $7,000 to reinstate the loan to current status since July 2021 – the month following the death of Ms. Terrell.

77. The mortgage loan is not delinquent by $7,000.

*Injury*

78. Ms. Robinson's mother, Ms. Terrell, talked to her often about the stress that she endured because of the actions of the Defendants. Due to the Defendants' oppressive and unfair actions, Ms. Terrell struggled to pay her bills. She often went without food and medications to meet the demands of Nationstar's oppressive house payment. Ms. Robinson, in an effort to lend aid to Ms. Terrell, diverted financial resources from her household to Ms. Terrell and has also suffered emotionally and mentally as a result of listening to and watching the impact of the stress of the situation on her mother. She continues to suffer actual damages flowing from the

Defendants' continued oppressive demands to reinstate the loan under unfair and deceptive terms and conditions from Nationstar. She requests actual damages in an amount not less than $100,000.

79. The Defendants' acted and continue to act in willful, wanton, and reckless disregard for the legal rights of Ms. Robinson. This Court should award punitive damages to stop the Defendants from continuing to engage in the unscrupulous practices.

80. Although Ms. Robinson seeks to recover monetary damages from the Defendants, monetary awards alone are insufficient/inadequate to prevent the Defendants from continuing in the conduct in which they have engaged and are engaging. This Court has authority to issue injunctive relief and should issue injunctive relief to Ms. Robinson to enjoin the Defendants from continuing in the offending and unlawful practices complained of herein. Accordingly, Ms. Robinson seeks injunctive relief.

### COUNT I

*Violation of the fair housing laws – Retaliation*

81. The Plaintiff incorporates and repleads herein all facts asserted above.

82. The fair housing laws regulate and govern residential real estate related transactions. **42 U.S.C. § 3605; 25 O.S. § 1452 (A) (17) (a)-(b)**.

83. Residential real estate related transactions include lending transactions, financial assistance and other services that are provided in connection with purchasing, constructing, or maintaining a dwelling. **Id.**

84. Under the fair housing laws, it is unlawful to discriminate against any person, because of the disability of the person, in the provision of services in connection with a dwelling. **Id.**

85. Additionally, discrimination includes the failure to grant reasonable accommodations to persons with disabilities upon request when such are necessary to afford the person with the disability an equal opportunity to use and to enjoy the dwelling of his or her choice. **42 U.S.C.A. § 3604 (f) (3) (B)** and **25 O.S. § 1452 (A) (17) (b)**.

86. Ms. Terrell requested a reasonable accommodation pursuant to the fair housing laws in 2015.

87. When Nationstar denied the 2015 request for a reasonable accommodation, Ms. Terrell sought to enforce her right to a reasonable accommodation through the judicial process in 2016.

88. Ms. Terrell did not succeed in enforcing her right to a reasonable accommodation through the judicial process. However, nearly three years after the initial reasonable accommodation request, Nationstar granted the requested accommodation by granting Ms. Terrell a loan modification.

89. Concurrently while accommodating Ms. Terrell, Nationstar and Ogden together engaged in unlawful retaliation against Ms. Terrell for her having enforced a right that is guaranteed under the fair housing laws. Specifically, Nationstar and Ogden conspired together to cancel Ms. Terrell's homeowner's insurance and to replace the policy with the more expensive forced placed insurance policy.

90. Nationstar also burdened the requested accommodation by increasing the interest rate on the loan by 0.375% without an explanation or justification.

91. The actions of Nationstar and Ogden, at the same time, harmed Ms. Robinson, who was and is the ascertainable heir and beneficiary of Ms. Terrell's estate and the beneficiary of the deed of the Elberta dwelling and the mortgage that runs with the land.

92. The retaliation of the Defendants continues through the present because each year, since 2018, Nationstar has renewed its forced placed insurance policy at increased rates, which it demanded from Ms. Terrell and demands from Ms. Robinson, as a condition of retaining possession of the Elberta dwelling.

93. The retaliatory conduct of the Defendants violates the Fair Housing Act, **42 U.S.C.A. § 3617**, which states, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [the Fair Housing Act]."

94. The retaliatory conduct of the Defendants also violates the **Oklahoma Discrimination in Housing Act, 25 O.S. § 1601.1 (1)** and **(2)**, which states, "It is a discriminatory practice for a person, or for two or more persons to conspire, (1) to retaliate or discriminate against a person because he has opposed a discriminatory practice, or because he has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act; (2) to aid, abet, incite, or coerce a person to engage in a discriminatory practice;"

95. Ogden aided and abetted Nationstar in its retaliatory discriminatory practice by cancelling Ms. Terrell's policy without justification, by returning the premium payments to Nationstar, and by concealing the transaction from Ms. Terrell and Ms. Robinson.

96. The conduct of the Defendants has interfered and continues to interfere with the exercise and enjoyment of the requested reasonable accommodation, which is a right that is protected under the federal and State fair housing laws.

97. Ms. Robinson is an aggrieved party because she has been harmed and is being harmed by the discriminatory housing practices of the Defendants.

98. The fair housing laws provide as a remedy, actual damages, punitive damages, and injunctive relief for an aggrieved party who has been harmed by an unlawful discriminatory housing practice.

99. This Court should award to Ms. Robinson actual damages, punitive damages and all available injunctive relief to affect the stoppage of the unlawful discriminatory housing practices.

100. This Court should award a reasonable attorney fee to Ms. Robinson's attorney.

101. Should Ms. Robinson incur costs or fees in association with the filing and prosecution of this action, this Court should award Ms. Robinson her costs and fees.

## COUNT 2

### *Violation of the Oklahoma Consumer Protection Act*

102. The Plaintiff incorporates and repleads all facts contained herein.

103. Ms. Robinson is a consumer as that term is defined under the Oklahoma Consumer Protection Act.

104. The Defendants are both businesses.

105. The actions complained of herein occurred in the ordinary courses of the businesses of the Defendants.

106. The note and mortgage (and all modifications thereto) is a lending transaction, which has been recognized as a consumer transaction.

107. The homeowner's insurance policies of the Defendants are also consumer transactions that work in tandem with the above referenced lending transaction.

108. The actions of the Defendants, as outlined herein, constitute unfair and deceptive trade practices, **15 O.S. § 752 (13)** and **(14)**, which violate the **Oklahoma Consumer Protection Act. 15 O.S. § 753 (20)**.

109. Ms. Robinson, as the beneficiary to the Elberta dwelling and the successor of the mortgage that runs with the Elberta dwelling, is an aggrieved consumer who has been and is being harmed by the deceptive and unfair trade practices of the Defendants.

110. Pursuant to the **Oklahoma Consumer Protection Act**, **15 O.S. § 761.1**, this Court may award Ms. Robinson actual damages against the Defendants for each of their violations of the Oklahoma Consumer Protection Act.

111. Additionally, the Court must find that the actions of the Defendants were unconscionable, as that term is defined by the **Oklahoma Consumer Protection Act, 15 O.S. § 761.1**, and award civil penalties of $2,000 to Ms. Robinson for each violation of the Oklahoma Consumer Protection Act.

112. The Court should award Ms. Robinson any court costs incurred, fees, and a reasonable attorney's fee to her counsel.

## COUNT 3

### *Fraud*

113. The Plaintiff incorporates and repleads all previous facts asserted herein.

114. The acts complained of herein also support a finding that the Defendants engaged in actual fraud and constructive fraud against Ms. Robinson.

115. Ms. Robinson has paid at least one mortgage payment which included a contribution towards the premium of the forced placed insurance.

116. Additionally, Nationstar intentionally denied receipt of payments from her and misrepresented to Ms. Robinson the amount of money needed to reinstate the mortgage loan to good standing.

117. Nationstar's misrepresentations and concealments are fraud as that term is defined under Oklahoma law.

118. This Court should award Ms. Robinson actuals damages.

119. The Court should assess punitive damages against the Defendants.

120. The Court should award attorney's fees to Ms. Robinson's counsel and court costs and fees to Ms. Robinson.

## PRAYER FOR RELIEF

Wherefore, Ms. Robinson prays for the following relief.

A. Actual damages for the Defendants' violations of the fair housing laws, the Oklahoma Consumer Protection Act, and fraud.

B. Punitive damages for the Defendants' violations of the same.

C. Injunctive relief to enjoin the Defendants from engaging in the practices complained of herein.

D. Civil penalties of $2,000 for each violation of the Oklahoma Consumer Protection Act.

E. A reasonable attorney fee to her attorney for assisting her in the prosecution of this action.

F. All court costs and expenses incurred in the prosecution of this action.

G. All other just and proper relief.

**JURY TRIAL DEMANDED**

Dated: December 23, 2021　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　s/ Teressa L. Webster
　　　　　　　　　　　　　　　　Teressa L. Webster OBA #30767
　　　　　　　　　　　　　　　　LEGAL AID SERVICES OF OKLAHOMA, INC.
　　　　　　　　　　　　　　　　530 Court Street
　　　　　　　　　　　　　　　　Muskogee, Oklahoma 74401
　　　　　　　　　　　　　　　　Telephone: (918) 683-5681
　　　　　　　　　　　　　　　　Facsimile: (918) 683-5690
　　　　　　　　　　　　　　　　Email: Teressa.Webster@laok.org
　　　　　　　　　　　　　　　　*Attorney for the Plaintiff,*
　　　　　　　　　　　　　　　　Ms. Katrina Robinson