IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  KATRINA ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 6:21-cv-00380-RAW |
| | ) | |
| 1.  NATIONSTAR MORTGAGE, LLC, | ) | |
| D.B.A. "MR. COOPER," | ) | |
| | ) | |
| 2.  OGDEN INSURANCE AGENCY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Katrina Robinson sued Defendants, Nationstar Mortgage, LLC

("Nationstar") and Ogden Insurance Agency, Inc. ("Ogden") for, *inter alia*, unlawful

retaliation in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3617, and

Oklahoma law.  Ms. Robinson also brought separate claims for violation of the

Oklahoma Consumer Protection Act and fraud under Oklahoma law.  Ms. Robinson

alleged that Defendants unlawfully retaliated against her late mother's exercise of her

rights under the FHA and state law by acting in concert to have her late mother's

insurance canceled (i.e., non-renewed).

Before the Court are (1) Nationstar's motion for summary judgment (ECF No.

45); (2) Ogden's motion for summary judgment (ECF No. 47); and (3) Ms. Robinson's

motion for partial summary judgment (ECF No. 50).  The Court concludes that Ms.

Robinson lacks standing to assert Count One (retaliation in violation of the FHA and the

Oklahoma Fair Housing Law).  Accordingly, for the reasons that follow, the Court **grants in part** the motions for summary judgment filed by Nationstar and Ogden to the extent that those motions seek summary judgment on Count One.  The Court **denies** Ms. Robinson's motion for partial summary judgment.  The Court **declines to exercise supplemental jurisdiction** over Counts Two and Three, which raise state-law claims, and accordingly **denies in part as moot** the motions for summary judgment filed by Nationstar and Ogden.

## I

The following undisputed facts are drawn from the parties' summary judgment briefing and attached affidavits and exhibits.[1]

## A

The Plaintiff, Katrina Robinson, is the daughter of the late Kathalene Terrell.  Ms. Terrell resided at a home in Muskogee ("the Property").  In July 2012, Ms. Terrell completed an application for homeowner's insurance with American Farmers & Ranchers Mutual Insurance Company ("AFR").  The application listed Ogden as Ms. Terrell's insurance agent.  Through Ogden, Ms. Terrell received a homeowner's insurance policy ("the Policy") from AFR for the term of one year.  The Policy was renewed on an annual basis for years afterward.

---

[1]      Ms. Robinson purports to dispute a number of the statements of fact adduced by Nationstar and Ogden.  But Ms. Robinson often fails to support her disputation with any specific evidence.  Unless otherwise noted, the facts that Ms. Robinson fails to properly dispute are deemed admitted for purposes of summary judgment.

In April 2013, Ms. Terrell signed a promissory note ("the Note") payable to Nationstar. *See* ECF No. 66-1 at 8–10 (Ex. A-1 to Aff. of Edward M. Hyne in Support of Def. Nationstar's Mot. for Summ. J., Note, filed Oct. 11, 2023). In return for a loan from Nationstar, Ms. Terrell promised to pay $83,198 plus interest. As security for the Note, Ms. Terrell executed a mortgage on the Property ("the Mortgage") in favor of Nationstar.[2] *See* ECF No. 66-1 at 12–20 (Ex. A-2 to Aff. of Edward M. Hyne in Support of Def. Nationstar's Mot. for Summ. J., Mortgage, filed Oct. 11, 2023). As part of the Mortgage, Ms. Terrell covenanted to procure hazard insurance for improvements on the Property. Ms. Terrell's monthly payment would include premiums for the required insurance. Ms. Robinson was not a signatory to the Note or the Mortgage, although she was the transfer-on-death beneficiary to the Property.

Ms. Terrell fell behind in her payments on the Note, and Nationstar indicated that it was going to seek foreclosure on the Property. In response, Ms. Terrell sent a letter through her counsel explaining that she was an elderly woman with disabilities, as defined by the FHA, and requesting a "reasonable accommodation" in the form of having her loan reinstated and working out an alternative payment schedule. *See* ECF No. 50-6 at 39 (Ex. 6 to Ms. Robinson's Mot. for Partial Summ. J., Letter from Ms. Terrell's Counsel to Nationstar's Counsel, filed Sept. 21, 2023).

In February 2016, Nationstar filed a petition in Oklahoma state court seeking to foreclose on the Property due to Ms. Terrell's default. Ms. Robinson, the transfer-on-

---

[2]     Mortgage Electronic Registration Systems, Inc., commonly known as "MERS," was named as nominee for Nationstar.

death beneficiary, was named in Nationstar's action because she "may be claiming some right, title or interest in and to the subject property." ECF No. 50-5 at 1 (Ex. 5 to Ms. Robinson's Mot. for Partial Summ. J., Nationstar's Pet., filed Sept. 21, 2023).  In response, Ms. Terrell filed an answer and raised a number of affirmative defenses.  Ms. Terrell also raised counterclaims—*viz.*, claims for breach of contract and violation of the Oklahoma Fair Housing Law, Okla. Stat. Ann. tit. 25, § 1451 *et seq.* (West).

The state trial court ruled in favor of Nationstar, concluding that Ms. Terrell had defaulted and that Nationstar was entitled to summary judgment on the foreclosure issue.  The state trial court rejected Ms. Terrell's counterclaims.  Ms. Terrell appealed to the Oklahoma Court of Civil Appeals, but that court affirmed the judgment, including the dismissal of her counterclaims.[3]

While Ms. Terrell's (ultimately unsuccessful) appeals were pending, she entered into a Loan Modification Agreement with Nationstar.  Under this agreement, the balance due increased, as did the interest rate.  As a result of the agreement, the state trial court partially vacated its prior judgment—in particular, it vacated its grant of foreclosure to Nationstar but left in place its denial of Ms. Terrell's counterclaims.

**B**

On April 10, 2018—around the same time that Nationstar and Ms. Terrell were engaged in loan modification negotiations—Nationstar sent a letter to AFR noting that "based upon site inspection," it had "reason to believe . . . that the [Property] may be

---

[3]        The Oklahoma Supreme Court denied Ms. Terrell's petition for certiorari.

VACANT." ECF No. 66-1 at 32 (Ex. A-4 to Aff. of Edward M. Hyne in Support of Def.

Nationstar's Mot. for Summ. J., Letter from Nationstar to AFR, filed Oct. 11, 2023).

Nationstar suggested that AFR "verify with the homeowner the status of the property"

and that AFR notify it in writing "if the possible vacancy in any way impairs, limits, or

restricts the . . . Coverage now in place." *Id.*

AFR reached out to Ogden and asked it to "inspect [the] property and advise if it is

occupied by the insured." ECF No. 66-14 at 2 (Ex. N to Am. Br. in Support of

Nationstar's Mot. for Summ. J., Message from AFR to Ogden, filed Oct. 11, 2023).[4]

---

[4]     Ms. Robinson purports to dispute this fact, but she provides no evidence in support of that assertion. The Court accordingly treats this fact as not disputed. Ms. Robinson also argues, without much elaboration, that the email from AFR to Ogden constitutes inadmissible hearsay. As to the balance of the email (all but the handwritten portion), the Court believes that its substance falls within the business records exception to the rule against hearsay. *See* FED. R. CIV. P. 56(c)(2); *Brown v. Perez*, 835 F.3d 1223, 1232–33 (10th Cir. 2016) (explaining that, for evidence to be considered at the summary judgment stage, "the content or substance of the evidence must be admissible" (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006))); *see also Wilmington Savings Fund Soc'y FSB v. Hutchins*, No. 21-2094, 2022 WL 1087143, at *4 (10th Cir. Apr. 12, 2022) (unpublished). Additionally, the Court notes that Ms. Robinson *herself* relies on this document to support her traceability arguments, which undercuts her argument that it is inadmissible. *See In re Epipen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 545 F. Supp. 3d 922, 933 n.8 (D. Kan. 2021) (finding hearsay objections to a document "disingenuous" when the party elsewhere relied on the same documents). The Court thus overrules Ms. Robinson's objection, at least in part.

As to Ms. Robinson's argument that the handwritten note on the email constitutes inadmissible hearsay, the Court assumes without deciding that it cannot consider the handwritten addendum. In any event, the handwritten addendum is not material to the question of summary judgment before the Court.

AFR told Ogden that if there was no reply by a certain date, "the vacancy endorsement will be added." *Id.*

In response to this request, Marla Mosley, an agent/office manager at Ogden, visited the Property. She rang the doorbell, knocked on the door, looked at the residence exterior, and spoke to neighbors.[5] She took photographs and tried to reach Ms. Terrell.[6] Ms. Mosley reported her observations to AFR.

On May 1, 2018, AFR sent Ogden notice that it would not renew Ms. Terrell's Policy after it expired in July 2018 because of "Condition / Upkeep." ECF No. 66-15 at 2–3 (Ex. O to Am. Br. in Support of Nationstar's Mot. for Summ. J., Property Underwriting Action Notification, filed Oct. 11, 2023).[7] Although "Vacant /

---

[5]     Ms. Robinson attempts to dispute this fact, going so far as to say that she "does not genuinely believe . . . [that] [Ms.] Mosley went to the [Property] at all" on the date in question. ECF No. 68 at 4, ¶ 12 (Ms. Robinson's Resp. to Ogden's Mot. for Summ. J., filed Oct. 12, 2023). But Ms. Robinson fails to properly support her assertion with record evidence—and, as such, we treat this fact as undisputed. Ms. Robinson points to evidence that a different, non-Ogden adjuster visited the Property the previous day and spoke to Ms. Terrell, in an attempt to cast doubt on whether the Ogden visit by Ms. Mosley in fact occurred. *See id.* But it does not follow that because a separate adjuster visited the Property around the same time and spoke to Ms. Terrell that there is a genuine dispute of fact as to whether Ms. Mosley visited the Property and concluded that it was vacant.

[6]     It is disputed whether Ms. Terrell's phone numbers were disconnected. But that dispute of fact is not material to the summary judgment inquiry.

[7]     Ms. Robinson objects to the consideration of this document at summary judgment because, according to her, it constitutes inadmissible hearsay and is not supported by an adequate foundation. Ms. Robinson's objections are entirely undeveloped: specifically, she makes no effort to show why "the content or substance" of the evidence would be inadmissible at trial. *See* FED. R. CIV. P. 56(c)(2); *see also Stella v. Davis Cnty.*, No. 1:18-CV-002, 2019 WL 4601611, at *3 (D. Utah Sept. 23, 2019) (unpublished). And, as Nationstar cogently argues, the substance of this document would

Unoccupied" was an option, it was not selected. *See id.* Accordingly, the Policy expired on July 6, 2018.

## C

After the expiration of the Policy, Nationstar notified Ms. Terrell that she did not have the insurance on the Property that was required by the Mortgage. In multiple communications, Nationstar told Ms. Terrell that because insurance was required, it intended to purchase insurance for the Property unless Ms. Terrell herself did so. Nationstar informed Ms. Terrell that the insurance that it would purchase would likely be more expensive than insurance that Ms. Terrell could acquire herself and that Ms. Terrell's monthly payments would be increased to include the costs of the new insurance policy.

Ms. Terrell did not obtain a new policy, and, eventually, Nationstar notified Ms. Terrell that it had purchased a new insurance policy and that Ms. Terrell's monthly payments would be increased accordingly. The new policy for the Property was issued by Standard Guaranty Insurance Company. Nationstar encouraged Ms. Terrell to obtain her own insurance policy in place of the one purchased by Nationstar. Ms. Terrell never did so.

---

be admissible at trial if an AFR witness testifies. *See Perez*, 835 F.3d at 1232–33; *Hutchins*, 2022 WL 1087143, at *4. And, again, Ms. Robinson herself relies on this very same document in her traceability briefing. *See In re Epipen*, 545 F. Supp. 3d at 933 n.8. The Court thus overrules Ms. Robinson's objection to the consideration of this evidence. And to the extent that Ms. Robinson seeks to dispute this material fact, she has failed to support her disputation with any citations to the evidentiary record.

Ms. Terrell died on June 24, 2021, and the Property was conveyed to Ms. Robinson in accordance with her mother's transfer-on-death deed. Payments on the Property were current at the time of Ms. Terrell's death. Ms. Robinson made at least one payment which included payment of the lender-placed insurance premium. Ms. Robinson, though, has not replaced the lender-placed insurance coverage with a different policy.

## II

Ms. Robinson filed a complaint against Nationstar and Ogden in December 2021. Count One claims that Defendants retaliated against her in violation of the FHA, 42 U.S.C. § 3617, and the Oklahoma Fair Housing Law, Okla. Stat. Ann. tit. 25, § 1451 *et seq.* (West). Count Two claims that Defendants violated the Oklahoma Consumer Protection Act, Okla. Stat. Ann. tit. 15, § 753 (West), and Count Three claims that Defendants committed actual and constructive fraud under Oklahoma law.

The Court has federal-question jurisdiction over Count One, which arises under, *inter alia*, the FHA. *See* 28 U.S.C § 1331; 42 U.S.C. § 3613. And it has supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367.

Defendants answered the complaint. After discovery, the parties filed cross-motions for summary judgment. Specifically, Nationstar filed a motion for summary judgment on all of the claims asserted against it. [8] *See* ECF No. 45 (Nationstar's Mot. for

---

[8]     Ms. Robinson asserts in passing that the Court should strike Nationstar's motion for summary judgment for failure to comply with LCvR 7.1. But Ms. Robinson utterly fails to explain why this is so. The Court thus deems Ms. Robinson's perfunctory argument based on LCvR 7.1 to be waived. *See Sawyers v. Norton*, 962 F.3d 1270, 1286

Summ. J., filed Sept. 18, 2023); ECF No. 66 (Am. Br. in Support of Nationstar's Mot. for Summ. J., filed Oct. 11, 2023). Ogden did the same. *See* ECF No. 47 (Ogden's Mot. for Summ. J., filed Sept. 18, 2023). And Ms. Robinson filed a partial motion for summary judgment, asserting that she was entitled to judgment as a matter of law on Count One. *See* ECF No. 50 (Ms. Robinson's Mot. for Partial Summ. J., filed Sept. 21, 2023).

Briefing on the pending summary judgment motions is complete, and the motions are ready for decision.

## III

"Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Courage to Change Ranches Holding Co. v. El Paso Cnty.*, 73 F.4th 1175, 1186–87 (10th Cir. 2023) (quoting FED. R. CIV. P. 56(a)). "'A genuine dispute as to a material fact "exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."'" *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016) (quoting *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1141 (10th Cir. 2011)). The Court must "view the evidence

---

(10th Cir. 2020) (deeming waived "arguments that are inadequately presented in an opening brief . . . [, such as those presented] only in a perfunctory manner" (alteration and omission in original) (quoting *United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019))); *see also Crocs, Inc. v. Double Diamond Distrib., Ltd.*, No. 06-cv-00605-PAB-MDB, 2022 WL 4094065, at *3 (D. Colo. Sept. 7, 2022) (unpublished) (applying this rule to arguments inadequately raised in district court briefing); *Schlecht v. Lockheed Martin Corp.*, No. 11-cv-03072-RM-BNB, 2014 WL 6778709, at *2 (D. Colo. Nov. 25, 2014) (unpublished) (same), *aff'd* F. App'x 775, 779 (10th Cir. 2015).

and draw all justifiable inferences favorably to [the non-movant]." *Wise v. DeJoy*, 71 F.4th 744, 748 (10th Cir. 2023).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200, 1211 (10th Cir. 2019) (quoting *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007)). "A movant that does not bear the burden of persuasion at trial may satisfy this burden 'by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim.'" *Id.* (quoting *Libertarian Party of N.M.*, 506 F.3d at 1309). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Id.* (quoting *Libertarian Party of N.M.*, 506 F.3d at 1309). The nonmovant must "identify facts 'by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.'" *Id.* (quoting *Libertarian Party of N.M.*, 506 F.3d at 1309). "The nonmovant must show more than a 'scintilla of evidence' in support of its position." *Lazy S Ranch Props., LLC v. Valero Terminaling & Distrib. Co.*, 92 F.4th 1189, 1198 (10th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

When the Court is presented with cross-motions for summary judgment, as here, it "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Teets*, 921 F.3d at 1211 (quoting *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 906–07 (10th Cir. 2016)); *see also Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019)

("Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party."). "When the parties file cross motions for summary judgment, '[the Court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997)).

## IV

For the reasons that follow, the Court concludes that Ms. Robinson lacks standing to assert Count One against Nationstar and Ogden. It accordingly **grants in part** the motions for summary judgment filed by Nationstar and Ogden insofar as those motions request summary judgment on Count One. It also **denies** Ms. Robinson's partial cross-motion for summary judgment. And because Count One is the only federal claim in this action, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and **dismisses those claims** without prejudice.[9]

---

[9]  To be sure, this Court would retain jurisdiction over the state-law claims in Counts Two and Three if Ms. Robinson had properly alleged diversity jurisdiction, *see* 28 U.S.C. § 1332(a)(1); *see also Wright v. Stanley*, No. CIV-11-1235-C, 2014 WL 1668534, at *1 (W.D. Okla. Apr. 25, 2014) (unpublished) (reconsidering the dismissal of claims over which the district court declined to exercise supplemental jurisdiction because there was complete diversity between the parties). But Ms. Robinson has never asserted that diversity jurisdiction is proper, and the record is insufficient to conclude that complete diversity—a prerequisite for subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1)—is met. It is Ms. Robinson's burden to allege facts essential to show jurisdiction, *see Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993), and there is simply insufficient evidence

11

A

The Court will begin with Nationstar's motion for summary judgment. Among other things, Nationstar argues that Ms. Robinson lacks constitutional standing to bring her claims. For the reasons that follow, the Court agrees with Nationstar—at least with respect to Count One.

1

Federal court jurisdiction is circumscribed by the limitations in Article III of the Constitution. Specifically, "Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Defs. of Wildlife v. Everson*, 984 F.3d 918, 944–45 (10th Cir. 2020) (quoting U.S. Const. art. III, § 2, cl. 1); *see also Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016) ("As the Supreme Court has explained, 'no principle is more fundamental to the judiciary's proper role in our system of

---

to conclude that diversity jurisdiction is proper. Ms. Robinson's complaint does not clearly state the citizenship of each party, some of which are limited liability entities. And, at least on the present record, the Court is unable to discern that the parties are completely diverse: for instance, according to the complaint and the civil cover sheet, both Ogden and Ms. Robinson are citizens of Oklahoma. We need not ask whether Ms. Robinson *could have* marshalled a more robust showing on the diversity question; she *has not* done so, and that is what matters. Accordingly, the Court is unable to find that it has diversity jurisdiction over the state-law claims in Counts Two and Three. *See Elliott v. Chrysler Fin.*, 149 F. App'x 766, 769 (10th Cir. 2005) ("The district court also considered the possibility of diversity jurisdiction under 28 U.S.C. § 1332, but correctly found jurisdiction lacking because the complaint failed to allege jurisdictional facts."); *Joplin v. Capstone Real Est. Servs., Inc.*, No. 1:24-cv-00326-WJ-JMR, 2024 WL 1933189, at *2 (D.N.M. May 2, 2024) (unpublished) ("Plaintiff has not shown that the Court has diversity jurisdiction over this case. The Amended Complaint does not assert that the Court has jurisdiction based on diversity of citizenship and does not allege that complete diversity of citizenship exists between Plaintiff and Defendant."), *appeal docketed*, No. 24-2077 (10th Cir. May 13, 2024).

government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" (quoting *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 408 (2013))).

The doctrine of standing helps to keep federal courts within these constitutional bounds. *See Brown*, 822 F.3d at 1163. "Standing concerns whether a plaintiff's action qualifies as a case or controversy when it is filed"; it "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." *Id.* at 1163–64 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

> To demonstrate standing, a plaintiff must show that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*People for the Ethical Treatment of Prop. Owners v. U.S. Fish & Wildlife Serv.*, 852 F.3d 990, 996–97 (10th Cir. 2017) (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Defs. of Wildlife*, 984 F.3d at 945 (quoting *Spokeo, Inc., v. Robins*, 578 U.S. 330, 338 (2016)).

"Where, as here, the Court addresses the issue of standing on cross-motions for summary judgment, the burden is on [the plaintiff] to set forth specific facts, by affidavit or other evidence, which demonstrate a genuine issue of material fact concerning standing." *Animal Legal Def. Fund v. Kelly*, 434 F. Supp. 3d 974, 987 (D. Kan. 2020), *amended on other grounds*, 2020 WL 1659855 (D. Kan. Apr. 3, 2020) (unpublished); *see*

*also Rio Grande Found'n v. Oliver*, 57 F.4th 1147, 1159 (10th Cir. 2023) ("To survive a summary judgment challenge to standing, 'the plaintiff must set forth by affidavit or other evidence specific facts that, if taken as true, establish each of the elements of standing.'" (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005))). Ordinarily, at this stage, defendants "should prevail on standing grounds if 'the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing.'" *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010) (quoting *Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007)). "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Rio Grande Found'n*, 57 F.4th at 1159 (quoting *Nova Health Sys.*, 416 F.3d at 1154).

Standing is claim-specific. *See Bronson*, 500 F.3d at 1106 ("Each plaintiff must have standing to seek each form of relief in each claim."). Put otherwise, courts "address standing on a claim-by-claim basis; a plaintiff may have standing to bring some, but not all, claims raised in a complaint." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 (10th Cir. 2021).

Finally, "[s]tanding is determined as of the time the action is brought." *Nova Health Sys.*, 416 F.3d at 1154. Here, that means that the question is whether Ms. Robinson had standing to challenge Defendants' actions as of December 2021—when the complaint was filed. *See id.* at 1155.

2

The Court will focus on whether Ms. Robinson has standing to assert Count One (the only federal claim in this action). The parties focus much of their arguments on whether Ms. Robinson has sufficiently alleged a concrete injury in fact. Nationstar asserts that what Ms. Robinson truly seeks to do is bring claims based on retaliation against her mother. Ms. Robinson denies that, asserting that "[w]hile [her] Complaint alludes to Nationstar's dealings with her mother for background purposes only, her Complaint clearly distinguishes between the harm that her mother suffered and that of her own." [10] ECF No. 60 at 15 (Ms. Robinson's Resp. to Nationstar's Mot. for Summ. J., filed Oct. 6, 2023).

Ms. Robinson's argument for an injury in fact is a complicated one, and it seemingly runs along these lines: the injury-in-fact requirement is met because the cost of Mortgage payments (including sums for escrow) due to Nationstar increased after the non-renewal of the Policy and Nationstar's subsequent purchase of lender-placed insurance.[11] Ms. Robinson argues that although it was her mother who was actually a signatory to the Mortgage, she is still injured because she must continue—and has in fact

---

[10] If Ms. Robinson had intended to assert a claim based on injuries to her mother, it is black-letter law that she could not do so. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("A federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action. . . .'" (second omission in original) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973))).

[11] Ms. Robinson frequently frames AFR's action as "canceling" the Policy, but AFR's action is best categorized as declining to renew the Policy.

continued—to pay the higher Mortgage payment as her mother's transfer-on-death beneficiary. The Court is skeptical that this is sufficient to give rise to the requisite injury in fact, particularly given the dearth of information in the record about Ms. Robinson's Mortgage payments.

But the Court need not resolve this issue. Even if Ms. Robinson suffered the requisite injury in fact, she has not met her burden with respect to the traceability element of standing (also known as causation).[12] *See N. Laramie Range All. v. FERC*, 733 F.3d 1030, 1033–34 (10th Cir. 2013) (concluding, without addressing an injury-in-fact requirement, that standing was absent because the plaintiff had failed to show traceability or redressability); *Klaver Constr. Co. v. Kan. Dep't of Transp.*, 211 F. Supp. 2d 1296, 1301–02 (D. Kan. 2002) (assuming that the plaintiff had incurred an injury in fact, but concluding that the plaintiff had failed to show traceability); *see also Doe v. Hunter*, No. 18-cv-JED-FHM, 2018 WL 6272896, at *2 (N.D. Okla. Nov. 30, 2018) (unpublished) (noting that "[e]ven were the Court to assume an injury-in-fact, Plaintiff cannot show that her asserted injury is fairly traceable"), *aff'd*, 796 F. App'x 532, 538 (10th Cir. 2019). Thus, even viewing the summary judgment record in the light most favorable to Ms. Robinson, Nationstar is entitled to summary judgment as to Count One.

**a**

The traceability requirement (also known as causation) necessitates a showing that the injury alleged "is 'fairly traceable' to the challenged conduct." *Santa Fe All. for Pub.*

---

[12] After reviewing the parties' summary judgment briefing, the Court requested supplemental briefing on the traceability issue.

*Health & Safety*, 993 F.3d at 814 (quoting *Nova Health Sys.*, 416 F.3d at 1156). "The element of traceability requires the plaintiff to show that the defendant is responsible for the injury, rather than some other party not before the court." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (quoting *S. Utah Wilderness All. v. Off. of Surface Mining Reclamation & Enf't*, 620 F.3d 1227, 1233 (10th Cir. 2010)). To be sure, this showing "does not require a plaintiff to establish that the defendant was the proximate cause of its injury" or that a "a 'defendant's actions are the very last step in the chain of causation.'" *Santa Fe All. for Pub. Health & Safety*, 933 F.3d at 814 (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). Rather, "Article III . . . require[s] proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys.*, 416 F.3d at 1156; *see also Santa Fe All. for Pub. Health & Safety*, 993 F.3d at 814.

Importantly, the injury cannot be "the result of the independent action of some third party not before the court," *Santa Fe All. for Pub. Health & Safety*, 993 F.3d at 814 (quoting *Nova Health Sys.*, 416 F.3d at 1156), or "depend[] on the unfettered choices made by independent actors," *N. Laramie Range All.*, 733 F.3d at 1035 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In other words, "where 'the independent action of some third party not before the court'—rather than that of the defendant—was the direct cause of the plaintiff's harm, causation may be lacking." *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976)). "That an injury is indirect does not necessarily defeat standing, '[b]ut it may make it substantially more difficult . . . to establish that, in

fact, the asserted injury was the consequence of the defendants' actions.'" *Habecker*, 518

F.3d at 1225 (quoting *Warth v. Seldin*, 422 U.S. 490, 504–05 (1975)).

"Traceability is absent when [the Court] ha[s] to guess why the third parties acted

as they did." *N. Laramie Range All.*, 733 F.3d at 1035; *see also Habecker*, 518 F.3d at

1225 ("If 'speculative inferences are necessary to connect [a plaintiff's] injury to the

challenged action,' this [traceability] burden has not been met." (first alteration in

original) (quoting *Nova Health Sys.*, 416 F.3d at 1157)); *FDA v. All. for Hippocratic*

*Med.*, 602 U.S. 367, 383 (2024) ("[P]laintiffs attempting to show causation generally

cannot 'rely on speculation about the unfettered choices made by independent actors not

before the courts.'" (quoting *Clapper*, 568 U.S. at 415 n.5)).  As the Supreme Court

recently explained, "the 'line of causation between the illegal conduct and injury'—the

'links in the chain of causation,'—must not be too speculative or too attenuated." *All. for*

*Hippocratic Med.*, 602 U.S. at 383 (quoting *Allen v. Wright*, 468 U.S. 737, 752, 759

(1984), *abrogated on other grounds*, *Lexmark Int'l Inc. v. Static Cntrl. Components, Inc.*,

572 U.S. 118 (2014)).

**b**

On the traceability issue, Nationstar argues that Ms. Robinson's purported

injuries—which, it accurately observes, are far from clear—were the result of AFR's

independent action in declining to renew the Policy.  *See* ECF No. 81 at 5 (Nationstar's

Suppl. Br., filed Apr. 16, 2024) ("Whatever difficulties Ms. Terrell experienced were due

to her choice to not maintain the upkeep of her home leading to AFR's decision to not

renew her insurance and her failure to obtain other insurance.  If Plaintiff has suffered

from lender placed insurance being on the Property, that was caused by two intervening third parties not before this court—Ms. Terrell and AFR—and no causal connection can be drawn between Nationstar and Plaintiff."); *see also id.* ("Plaintiff's injuries are so vague it is impossible to know what caused them.").[13]

For her part, Ms. Robinson asserts that "[t]he conduct of the Defendants, whereby they influenced the insurer to cancel the homeowner's insurance policy, interferes with Ms. Robinson's enjoyment of the rights granted under the Fair Housing Act, which her mother exercised." ECF No. 83 at 6 (Ms. Robinson's Suppl. Br., filed Apr. 16, 2024) (bold typeface omitted). She further argues that the fact that it was AFR—which is not a party to this suit—who declined to renew the Policy does not defeat standing because "but for the actions of both Defendants, the insurance policy would not have been canceled or non-renewed." *Id.* According to Ms. Robinson, "[t]his Court does not have to guess why AFR canceled the policy" because "[t]he evidence clearly shows that AFR canceled the policy because both Defendants falsely informed AFR that the property was vacant." *Id.* (citing the record).

---

[13]    At times, Nationstar conflates the issue of whether Ms. Robinson has shown the requisite causation to satisfy the traceability element of standing with the question of whether, for purposes of proving an FHA retaliation action, there is a causal connection between the exercise of the FHA right and Defendants' conduct. Ogden does the same. But the two questions are distinct: first, whether the harm purportedly suffered by Ms. Robinson can be fairly traced to the conduct of Defendants and, second, whether there is a connection between Defendants' conduct and the exercise of an FHA right. For purposes of standing, the Court must resolve the first inquiry.

**c**

Nationstar has the better argument. As best as the Court can determine from Ms. Robinson's opaque briefing, the conduct that she claims is retaliatory is Nationstar reporting to AFR that the Property appeared vacant.[14] And the purported concrete injury is the financial impact to Ms. Robinson of having to pay the increased payments to cope with the lender-placed insurance that was necessary after AFR non-renewed the Policy.

The "chain of events," *Habecker*, 518 F.3d at 1225, that Ms. Robinson uses to connect Nationstar's supposed retaliatory action to the ultimate injury is complex, containing multiple links. First, allegedly as retaliation for Ms. Terrell's exercise of her fair housing rights, Nationstar sent a letter to AFR suggesting that the Property was

---

[14]      At various points in her original summary judgment briefing, Ms. Robinson seems to refer to other actions that she contends were retaliatory, such as the increase in the interest rate in Ms. Terrell's loan modification agreement and the fact that she was named in the 2016 foreclosure lawsuit. But Ms. Robinson fails to develop any argument on these points, and it is clear to the Court that the focus of Ms. Robinson's retaliation claim is Defendants' alleged unlawful action in having Ms. Terrell's insurance non-renewed. The Court thus deems Ms. Robinson's perfunctory arguments as to other allegedly retaliatory actions to be waived. *See Sawyers*, 962 F.3d at 1286; *see also Crocs, Inc.*, 2022 WL 4094065, at *3; *Schlecht*, 2014 WL 6778709, at *2.

Additionally, the Court observes that despite having the specific opportunity to do so in her supplemental brief on traceability, Ms. Robinson does not argue that any of these additional actions were relevant to the traceability analysis; instead, she focuses solely on Nationstar's conduct in "influenc[ing] the insurer" to not renew the Policy. *See* ECF No. 83 at 5 (Ms. Robinson's Suppl. Br., filed Apr. 16, 2024). It is Ms. Robinson's burden to show that federal subject-matter jurisdiction is proper, and the Court will not take up her mantle by manufacturing arguments that she herself has not made. *See Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 (10th Cir. 2016); *cf. Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011). The Court thus focuses its traceability analysis on what Ms. Robinson has focused on: the purported action in having her insurance non-renewed.

vacant.  Second, AFR then asked Ogden to investigate.  Third, Ogden reported that the
Property appeared vacant.  Fourth, AFR, relying on the information provided by Ogden,
declined to renew the Policy, which led to the imposition of lender-placed insurance on
Ms. Terrell's Mortgage by Nationstar.  Fifth, Ms. Robinson succeeded to Ms. Terrell's
interest and continues to have to pay elevated premiums to account for the lender-placed
insurance.

When there is such an attenuated relationship between the allegedly unlawful
act—*viz.*, the retaliatory action—and the ultimate harm, traceability can be hard to
show.[15]  *See All. for Hippocratic Med.*, 602 U.S. at 383 (observing that the "'line of
causation between the illegal conduct and injury'" must not be "too attenuated" (quoting
*Allen*, 468 U.S. at 752)); *Habecker*, 518 F.3d at 1225 (noting that an indirect injury "may
make it substantially more difficult" to establish traceability (quoting *Warth*, 422 U.S. at
505)).  Ms. Robinson has not met her burden.  It is evident from the chain of events
above that between Nationstar's allegedly retaliatory action and the ultimate harm to Ms.

---

[15]     The Court is, of course, aware of the fact that it is Nationstar who placed
the lender-placed insurance on Ms. Terrell's Mortgage and consequently raised Ms.
Terrell's premium payments.  But that does not affect the Court's view of the traceability
analysis: as far as can be determined from Ms. Robinson's filings, the primary action
alleged to be retaliatory was Nationstar's report that the Property was vacant, which
(according to Ms. Robinson) led to the non-renewal of the Policy.  The Mortgage
provided that Ms. Terrell was required to have insurance on the Property.  Therefore,
irrespective of any retaliatory intent, Nationstar was obliged to ensure that there was
insurance on the Property—whether it purchased the insurance or Ms. Terrell did so, and
Ms. Terrell failed to do so, even though Nationstar gave her an opportunity to take such
action.

Robinson lay the actions of *multiple* other parties: Ms. Terrell, Ogden, and, most importantly, AFR.

The Court focuses on AFR, which is the third party that actually declined to renew the Policy. Despite its integral role in the chain of events discussed above, AFR is not a party to this suit. To be sure, that alone would not be sufficient to conclude that Ms. Robinson has failed to show traceability. *See Habecker*, 518 F.3d at 1225 ("That an injury is indirect does not necessarily defeat standing[] . . . ."). But Ms. Robinson must show that there is a "substantial likelihood" that Nationstar's conduct—reporting to AFR that the Property seemed abandoned—"caused plaintiff's injury in fact," which is AFR's non-renewal of the Policy and the corresponding increase in Mortgage escrow payments to pay for lender-placed insurance. *See Nova Health Sys.*, 416 F.3d at 1156–57.

Ms. Robinson has not satisfied this standard. There is scant evidence in the record about why AFR declined to renew the Policy, which is the key action at issue. The summary judgment record contains no deposition testimony or declarations from AFR employees. In fact, it contains relatively few documents related to the non-renewal of the Policy. And what documents are included (such as Nationstar's letter to AFR, AFR's communication with Ogden, and the notices of cancelation) simply do not establish any link between Nationstar's report that the Property appeared vacant and the ultimate decision not to renew the Policy.[16]

---

[16]    In a portion of Ms. Robinson's deposition testimony on which no party relies, Ms. Robinson stated that her mother told her that the Policy was canceled because "the property was vacant and . . . someone had called them to tell them that she no longer lived there." ECF No. 66-17 at 95: 17–19 (Ex. Q to Am. Br. in Support of Nationstar's

In fact, the Court notes that what evidence exists cuts *against* traceability.  In the "Property Underwriting Action Notification" sent from AFR to Ogden, AFR stated that the Policy "will be non-renewed on 7/6/18 for the following reason: . . . Condition / Upkeep."  ECF No. 66-15 at 3 (Ex. O to Am. Br. in Support of Nationstar's Mot. for Summ. J., Property Underwriting Action Notification, filed Oct. 11, 2023).  AFR expressly did not select "Vacant / Unoccupied" as the reason for non-renewal even though it was an option. *See id.*  Even drawing all inferences in favor of Ms. Robinson, the fact that the Policy was non-renewed for "Condition / Upkeep" rather than vacancy makes it hard to see how there could be a substantial likelihood that Nationstar's vacancy report caused AFR's non-renewal of the Policy.

In sum, the Court is left to speculate what—if any—impact Nationstar's report that the Property appeared to be vacant had on AFR's decision not to renew the Policy.  And "[i]f 'speculative inferences are necessary to connect [a plaintiff's] injury to the challenged action,'" traceability is not present.  *Habecker*, 518 F.3d at 1225 (second alteration in original) (quoting *Nova Health Sys.*, 416 F.3d at 1156); *see also N. Laramie Range All.*, 733 F.3d at 1035.

Ms. Robinson's counterarguments do not move the needle.  In response to the Court's request for additional argument on whether Ms. Robinson's injuries in Count

---

Mot. for Summ. J., Dep. of Ms. Robinson, filed Oct. 11, 2023).  She also admitted that she had no proof that the Policy was actually canceled for "vacancy or any other reason[.]" *Id.* at 95:20–25 (Dep. of Ms. Robinson).  Even if the Court were to consider this uncited deposition testimony, it would not create a general dispute of material fact as to traceability.  Ms. Robinson relies solely on inadmissible hearsay evidence from her late mother, which cannot be considered at the summary-judgment stage.

One are fairly traceable to the conduct of Nationstar and Ogden, Ms. Robinson focuses

first on who constitutes "aggrieved persons" under the FHA.    But Ms. Robinson

overlooks that the elements of Article III standing must be met even if a person qualifies

as an aggrieved person under the FHA.  *See Bank of Am. Corp. v. City of Miami*, 581

U.S. 189, 196–97 (2017) (noting that a plaintiff needs to satisfy constitutional standing

requirements as well as prudential or statutory standing requirements).  And Ms.

Robinson's bare assertion that she is an aggrieved person does not show the requisite

traceability.

　　　And when Ms. Robinson does grapple with the actual traceability analysis, her

arguments are unpersuasive.  Ms. Robinson asserts that although it was AFR who non-

renewed the Policy, "[t]his Court does not have to guess why AFR canceled the policy.

The evidence clearly shows that AFR canceled the policy because both Defendants

falsely informed AFR that the property was vacant."  ECF No. 83 at 6 (Ms. Robinson's

Suppl. Br., filed Apr. 16, 2024).  But the evidence cited by Ms. Robinson does not bear

out this assertion.  Specifically, Ms. Robinson primarily points the Court to (1)

Nationstar's letter to AFR regarding the possible vacancy of the Property; (2) AFR's

directive to Ogden to investigate the Property; (3) the "Property Underwriting Action

Notification" notice discussed above; (4) a cursory "Confirmation of Cancellation"; and

(5) a letter written by Ogden to the Oklahoma Insurance Department regarding the non-

renewal of the Policy.  *See id.* (citing ECF Nos. 47-9, 47-10, 47-14, 47-15, and 50-14).

These documents do not illuminate any actual link between Nationstar's letter to AFR

and the ultimate non-renewal of the Policy.[17]   In other words, Ms. Robinson has not

pointed to evidence showing that Nationstar's report that the Property may be vacant is

the reason why AFR non-renewed the Policy.  And the Court observes that Ms. Robinson

has pointed to *no* case law in which a party like her was deemed to have standing.

   Ms. Robinson bears the burden of showing all elements of standing, including

traceability.  And, at the summary judgment stage, Ms. Robinson must "set forth" the

"elements of standing" by "specific facts" in the summary judgment record.  *Rio Grande

Found'n*, 57 F.4th at 1159 (quoting *Nova Health Sys.*, 416 F.3d at 1154).  Because "the

record is devoid of evidence raising a genuine issue of material fact that would support"

the traceability element of standing, *see Brammer-Hoelter*, 602 F.3d at 1185 (quoting

*Day*, 500 F.3d at 1132), Ms. Robinson has failed to shoulder her burden as to Count One

as asserted against Nationstar.

---

[17]   In Ogden's letter to the Oklahoma Insurance Department, Ms. Mosley briefly wrote that "[o]n 05/01/2018 received notice from my underwriter that the policy was being non-renewed on 07/06/2018 for the following reasons: Condition/Upkeep/Vacant/Unoccupied."  ECF No. 50-14 at 1 (Ex. 14 to Ms. Robinson's Mot. for Partial Summ. J., Letter from Ogden, filed Sept. 21, 2023).  Even if this *could* be read as supporting Ms. Robinson's position that AFR cancelled the insurance because of Nationstar's report that the Property was vacant—which requires quite an inferential leap—it is axiomatic that a nonmovant "must show more than a 'scintilla of evidence' in support of its position."  *Lazy S Ranch Props.*, 92 F.4th at 1198 (10th Cir. 2024) (quoting *Liberty Lobby*, 477 U.S. at 252).  That is all that this single document is—a scintilla of evidence—which was written years after the actual non-renewal by an individual who was not involved in the actual non-renewal process.  And it casts little light on the question at issue.

B

Ms. Robinson lacks standing to assert Count One against Ogden for similar reasons: there is no evidence supporting Ms. Robinson's position that AFR's non-renewal of the Policy is fairly traceable to the conduct of Ogden.  The retaliation claim against Ogden seems to arise solely from Ogden's actions in visiting the Property and reporting to AFR that the Property appeared vacant.  But, again, the action of a third party—AFR—stands between the allegedly retaliatory act of Ogden and the ultimate harm (non-renewal of the Policy and the corresponding increase in monthly payments).  Moreover, there is no evidence in the summary judgment record showing that Ogden's activities were the cause of AFR's decision not to renew the insurance.

On the issue of traceability, Ogden argues that "[a]ny injury was caused by third parties that are not parties to this lawsuit."  ECF No. 82 at 5 (Ogden's Suppl. Br., filed Apr. 16, 2024) (bold typeface and initial capitals omitted).  Ogden contends that the summary judgment record shows that "AFR chose to non-renew the Terrell policy" and that there is "no evidence" that Ogden "*caused* the AFR policy" not to be renewed.  *Id.* at 6.  In response, Ms. Robinson argues that the Policy was "canceled" because Ogden (alongside Nationstar) "falsely informed AFR that the property was vacant."  ECF No. 83 at 6 (Ms. Robinson's Suppl. Br., filed Apr. 16, 2024).

Ogden has the better argument as to traceability.  Read in the light most favorable to Ms. Robinson, the record shows that: (1) AFR directed Ogden to investigate whether the Property was vacant; (2) an employee of Ogden visited the Property and reported to AFR that it appeared vacant; and (3) a few weeks later, AFR declined to renew the Policy

due to "Condition / Upkeep"—*not* due to vacancy, *see* ECF No. 47-14 at 1 (Ex. 14 to Ogden's Mot. for Summ. J., Property Underwriting Action Notification, filed Oct. 10, 2023). What is missing is record evidence that would create a genuine dispute of material fact as to whether Ogden's allegedly false report that the Property was vacant *caused* the third party, AFR, to non-renew the Policy for an entirely distinct reason— "Condition / Upkeep."

In order for Ms. Robinson to survive a summary judgment challenge to standing, she cannot rest on unsupported allegations: rather, she must point to record evidence generating a genuine dispute of material fact as to each element of standing. Ms. Robinson has failed to do so with respect to, at a minimum, the traceability element of standing as to Count One, as asserted against Ogden.

### C

The Court turns next to Ms. Robinson's partial motion for summary judgment, which seeks summary judgment in her favor as to Count One. But Ms. Robinson is not entitled to summary judgment on Count One because she lacks standing to assert that claim against either Nationstar or Ogden.

To be sure, cross-motions for summary judgment must be treated separately. *See Teets*, 921 F.3d at 1211; *see also Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979))). But our discussion of standing with respect to Defendants' motions for summary

judgment applies with equal—if not more[18]—force to Ms. Robinson's cross-motion

seeking summary judgment in her favor on Count One.  Simply put, Ms. Robinson has

not pointed to record evidence that would create a genuine dispute as to whether the

purported injury that she suffered from the non-renewal of the Policy—as well as the

related increase in monthly payment amounts—is fairly traceable to Nationstar or Ogden.

Once again, the actions of a third party—AFR—stand in the way.  Given the paucity of

evidence in the record, we are left to speculate if AFR's non-renewal of the Policy was

caused by the allegedly retaliatory actions of Ogden or Nationstar.  Under these

circumstances, Ms. Robinson has not carried her burden to show that she has standing, so

her partial motion for summary judgment as to Count One must be denied.

### D

What remains are Counts Two and Three, both of which are state law claims—

*viz.*, claims under the Oklahoma Consumer Protection Act and claims of fraud under

Oklahoma state law.  Nationstar and Ogden assert that they are entitled to summary

judgment on these claims as well—on both standing grounds and on the merits.

---

[18]    In addressing Ms. Robinson's partial motion for summary judgment, we
view the summary judgment record in the light most favorable to Nationstar and Ogden.
Given that there was no genuine dispute of material fact as to whether Ms. Robinson had
standing when the record was viewed in her favor, it makes sense that there is no genuine
dispute of material fact when the same summary judgment record is viewed in favor of
Nationstar and Ogden.  *Cf. Rio Grande Found'n v. Oliver*, --- F. Supp. 3d ----, 2024 WL
1345532, at *20 (D.N.M. Mar. 29, 2024) ("The Secretary has satisfied [her] burden when
viewing the factual record favorably to [the opposing party].  It stands to reason that, in
viewing factual inferences favorably to the Secretary, she likewise satisfies the burden to
avoid summary judgment."), *appeal docketed*, No. 24-2070 (10th Cir. Apr. 25, 2024).

The Court will not reach Nationstar's and Ogden's arguments because it declines to exercise supplemental jurisdiction over Counts Two and Three.  "Section 1367(c) enables a federal district court to forgo exercising supplemental jurisdiction over a related state law claim if 'the district court has dismissed all claims over which it has original jurisdiction.'"  *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1314 (10th Cir. 2021) (quoting 28 U.S.C. § 1367(c)(3)).  "When all federal claims have been dismissed, the court may, and *usually should*, decline to exercise jurisdiction over any remaining state claims."  *Id.* (emphasis added) (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011)).

Here, Ms. Robinson lacks standing to assert Count One, the only federal claim in the action, so that claim must be dismissed.  And, in light of that disposition and after a review of the record, the Court concludes that it is prudent—and in line with, *inter alia*, considerations of comity and convenience—to decline to exercise supplemental jurisdiction over Counts Two and Three.[19]

## V

In conclusion, even reading the summary judgment record in the light most favorable to Ms. Robinson, she has failed to create a genuine dispute of material fact as to whether her injuries under Count One are fairly traceable to the conduct of Nationstar and

---

[19]   The Court thus does not reach the issue of whether Ms. Robinson has standing to assert Counts Two and Three.  *See Valenzuela v. Silversmith*, 699 F.3d 1199, 1205 (10th Cir. 2012) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007))).  It also does not reach any argument on the merits of Counts Two and Three.

Ogden.  The Court accordingly **grants in part the motions** for summary judgment filed by Nationstar (ECF No.45) and Ogden (ECF No. 47) as to Count One.  Furthermore, the Court **denies** Ms. Robinson's motion for partial summary judgment (ECF No. 50), and it **dismisses Count One for lack of subject-matter jurisdiction**.

Additionally, given that the only federal claim in this action has been dismissed, the Court **declines to exercise supplemental jurisdiction** over Counts Two and Three and **dismisses those claims without prejudice**.  It accordingly **denies in part as moot** the motions for summary judgment filed by Nationstar and Ogden to the extent that those motions seek summary judgment on Counts Two and Three.

Thus, the case is hereby ordered **DISMISSED.**

Dated this 5th day of August 2024.

JEROME A. HOLMES
CHIEF JUDGE OF THE UNITED STATES COURT
OF APPEALS FOR THE TENTH CIRCUIT, sitting by
designation pursuant to 28 U.S.C. § 291(b).